**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION**

**GREGORY LAMAR KENON,**

     **Plaintiff,**

**vs.**                                                          **Case No. 4:11cv324-WCS**

**MICHAEL J. ASTRUE,
Commissioner of Social Security,**

     **Defendant.**

_____/

**MEMORANDUM OPINION**

     This is a social security case referred to me upon consent of the parties and

reference by District Judge Mickle.  Doc. 11.   It is concluded that the decision of the

Commissioner should be affirmed.

**Procedural status of the case**

     Plaintiff, Gregory Lamar Kenon, applied for disability insurance benefits.  His

insured status for disability benefits ends on December 31, 2012.  Plaintiff alleges

disability due to heart problems, right shoulder and neck impairments, back pain,

weakness in his right hand, headaches, tendinitis, sleep deprivation due to restless leg

syndrome, and dizziness and nausea from medications, with onset on May 3, 2007.

Plaintiff was 50 years of age on the alleged onset date, has a 12th grade education, and

has past relevant work as an auto mechanic and an auto parts courier.  The

Administrative Law Judge found that Plaintiff has the residual functional capacity to do a

limited range of light work, cannot perform his past relevant work, but can perform other

work in the national economy (courier), and thus was not disabled.

**Legal standards guiding judicial review**

This court must determine whether the Commissioner's decision is supported by

substantial evidence in the record and premised upon correct legal principles.  Chester

v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  "Substantial evidence is more than a

scintilla, but less than a preponderance.  It is such relevant evidence as a reasonable

person would accept as adequate to support a conclusion."  Bloodsworth v. Heckler,

703 F.2d 1233, 1239 (11th Cir. 1983) (citations omitted); Moore v. Barnhart, 405 F.3d

1208, 1211 (11th Cir. 2005).  "The Commissioner's factual findings are conclusive if

supported by substantial evidence."  Wilson v. Barnhart, 284 F.3d 1219, 1221 (11th Cir.

2002).[1]

A disability is defined as a physical or mental impairment of such severity that the

claimant is not only unable to do past relevant work, "but cannot, considering his age,

education, and work experience, engage in any other kind of substantial gainful work

---

[1] "A 'substantial evidence' standard, however, does not permit a court to uphold the
Secretary's decision by referring only to those parts of the record which support the ALJ.
A reviewing court must view the entire record and take account of evidence in the
record which detracts from the evidence relied on by the ALJ."  Tieniber v. Heckler, 720
F.2d 1251, 1253 (11th Cir. 1983); Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir.
1981) (citations omitted).

which exists in the national economy . . . ."  42 U.S.C. § 423(d)(2)(A).  A disability is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Both the "impairment" and the "inability" must be expected to last not less than 12 months.  Barnhart v. Walton, 535 U.S. 212, 122 S.Ct. 1265, 1272, 152 L.Ed.2d 330 (2002).

The Commissioner analyzes a claim in five steps.  20 C.F.R. § 404.1520(a)-(f):

1.   Is the individual currently engaged in substantial gainful activity?

2.   Does the individual have any severe impairments?

3.   Does the individual have any severe impairments that meet or equal those listed in Appendix 1 of 20 C.F.R. Part 404?

4.   Does the individual have any impairments which prevent past relevant work?

5.   Do the individual's impairments prevent other work?

A positive finding at step one or a negative finding at step two results in disapproval of the application for benefits.  A positive finding at step three results in approval of the application for benefits.  At step four, the claimant bears the burden of establishing a severe impairment that precludes the performance of past relevant work.  If the claimant carries this burden, the burden shifts to the Commissioner at step five to establish that despite the claimant's impairments, the claimant is able to perform other work in the national economy.  Chester, 792 F.2d at 131; MacGregor v. Bowen, 786 F.2d 1050, 1052 (11th Cir. 1986).  If the Commissioner carries this burden, the claimant must prove

that he or she cannot perform the work suggested by the Commissioner.  Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987).

**Legal analysis**[2]

The medical evidence will be discussed in connection with each point raised by Plaintiff.  The most relevant evidence is that immediately before and after the onset date, May 3, 2007.

### Whether the ALJ erred by not finding at step 2 that Plaintiff has a "severe" back impairment

Plaintiff first contends that the ALJ should have determined that his back problem is a "severe" impairment.  Doc. 18, p. 31.

At step 2, the issue is whether Plaintiff has shown that he or she has a condition that has more than "a minimal effect on her ability to:  walk, stand, sit, lift, push, pull, reach, carry, or handle, etc."  Flynn v. Heckler, 768 F.2d 1273, 1275 (11th Cir. 1985) (relying on 20 C.F.R. § 404.1521).  "[I]n order for an impairment to be non-severe, 'it [must be] a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.' "  Parker v. Bowen, 793 F.2d 1177, 1181 (11th Cir. 1986), citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984), Edwards v. Heckler, 736 F.2d 625, 630 (11th Cir. 1984), and Flynn, 768 F.2d at 1274.  "Step two is a threshold inquiry.  It allows only claims based on the most trivial impairments to be

---

[2] Information about medical terms and prescription drugs come from MEDLINE PLUS (MERRIAM-WEBSTER), found at: www.nlm.nih.gov/medlineplus/mplusdictionary.htm.  This information is not in controversy, and there is no need here to attach copies of the web pages reviewed.

rejected.  The claimant's burden at step two is mild."  <u>McDaniel v. Bowen</u>, 800 F.2d 1026, 1031 (11th Cir. 1986) (clarifying <u>Brady</u>).

The Administrative Law Judge determined that the record revealed "only minimal back problems," that the overall objective medical evidence did not support the claim, and that the majority of the references in the record were based upon Plaintiff's "subjective complaints."  R. 14.  The ALJ noted that when Plaintiff "recently visited a hospital in regards to his heart problems, he denied having any other problems and made no reference to problems with his back (Exhibit 29F)."  *Id.*  The ALJ also discussed the findings by Wayne Sampson, M.D., who performed a consultative examination on April 9, 2008, for complaints of heart problems, back pain, and shoulder pain.  R. 16.  The ALJ noted that on examination, Dr. Sampson found that Plaintiff:

> had full range of motion on his lumbar and cervical spine, his straight leg raises were negative, he was able to stand and walk on his heels and toes, . . ., [and] his back was not tender with no spasms . . . .

R. 17.

Plaintiff had a work-related accident on July 27, 2000.  R. 1190.  Plaintiff worked as an auto mechanic.  Plaintiff was struck in the head by a heavy trunk lid of a motor vehicle.  *Id.*  His lower back pain was diagnosed as musculoskeletal.  R. 1188.

On July 31, 2000, Plaintiff said his back hurt and he had numbness in his great toe and lateral calf, but his chief complaint was right hip pain.  R. 1190.  An x-ray of his lower spine revealed chronic changes at L5-S1, but "nothing acute."  *Id.*

On August 3, 2000, Plaintiff was found to have numbness in four toes on the right, but straight leg raising testing was negative for lower back pain.  R. 1192.  An MRI was ordered.  *Id.*

On August 16, 2000, Plaintiff returned for treatment.  Doc. 18, p. 32.  On that date, D. Brett Perkins, M.D., noted from an MRI that Plaintiff had "only a disk bulge."  R. 1194.  Dr. Perkins found that Plaintiff had positive straight leg raising sign for pain on the right, but negative on the left.  *Id.*  His diagnosis was right lower lumbar pain.  *Id.*  He prescribed physical therapy for two weeks and no return to work as a mechanic until follow-up in two weeks.  *Id.*

On September 4, 2000, Plaintiff still complained of "right leg tingling, numbness and pain," and he was referred by Dr. Perkins to orthopedics.  R. 1196.  On September 18, 2000, it was noted that he was to "return to work modified duty."  R. 1197.

One might reasonably conclude from the accident treatment notes discussed above that in the early fall of 2000, Plaintiff had "severe" impairment of back pain that caused more than minimal limitations upon his ability to work.  But that is the last objective evidence to support such a conclusion, and the alleged onset date is May 3, 2007.  Plaintiff does not identify any other objective evidence in the record after September, 2000, to show that he has had continuing work limitations due to lower back pain.

As properly determined by the ALJ, the consultative examination by Dr. Sampson on April 9, 2008, was essentially negative for back pain.  R. 905-907.  Plaintiff told Dr. Sampson that he had a dull, non-radiating lower back pain stemming from his accident

in 2000, and Plaintiff said that the pain limits bending and lifting anything over 25 pounds.  R. 905.  Plaintiff also said that he had "intermittent right shoulder pain and inability to lift anything over 20-30 lbs with his right hand."  R. 906.  He said he had had "intermittent numbness and tingling extending from ankle to right leg for the past year." *Id.*  Dr. Sampson found, however, that Plaintiff's motor strength was "5/5 throughout," and he had normal gait.  *Id.*  He found that Plaintiff could "get up from a seated position without difficulty," and could get on and off the examination table without difficulty.  R. 907.  Dr. Sampson found that Plaintiff's back was not tender, there were no muscle spasms, and the straight leg raising test was negative both supine and sitting.  *Id.*  This is substantial evidence in the record to determine at step 2 that on the alleged onset date, Plaintiff did not a "severe" impairment of back pain.

In addition, an examination by Winston R. Ortiz, M.D., a neurologist, on May 16, 2007, determined that Plaintiff's lumbosacral spine was without deformity or tenderness with palpation, toe and heeling walking were normal, and the sitting straight leg raising test was negative on both right and left for lower back pain.  R. 1346.  Further, on January 17, 2009, Krista W. Rankin, M.D., saw Plaintiff for a complaint of muscle cramps and leg pain with an alleged onset only two weeks earlier.  R. 1230.  Plaintiff said he had mild to moderate aching and burning in his right lower leg without radiation. *Id.*  Plaintiff said he had had a similar problem "after back injury 2000, worse last 2 weeks."  *Id.*  He said he had been walking more regularly.  *Id.*  Back pain was not listed among Plaintiff's "chronic problems."  *Id.*  Dr. Natosha Canty, M.D., saw Plaintiff on January 19, 2009, and said that the pain in his leg was likely due to muscle cramps, and

she recommended that he continue to exercise.  R. 1233.  Back pain was not listed as a

chronic problem, and Plaintiff had no skeletal tenderness.  *Id.* and R. 1234.

All of this is substantial evidence to support the conclusion that on the onset

date, Plaintiff' did not have the "severe" impairment of back pain.  The ALJ did not err at

step 2 as to this issue.

### Whether the ALJ erred in his evaluation of Plaintiff's subjective complaints of disabling conditions

Plaintiff contends that the ALJ did not properly evaluate his testimony describing

the severity of his pain and other symptoms.  Pain and other symptoms reasonably

attributed to a medically determinable impairment are relevant evidence for determining

residual functional capacity.  Social Security Ruling 96-8p, p. 4.  Pain and other

symptoms may affect either exertional or non-exertional capacity, or both.  *Id.*, p. 6.

> In order to establish a disability based on testimony of pain and other
> symptoms, the claimant must satisfy two parts of a three-part test
> showing:  (1) evidence of an underlying medical condition; and (2) either
> (a) objective medical evidence confirming the severity of the alleged pain;
> or (b) that the objectively determined medical condition can reasonably be
> expected to give rise to the claimed pain.  *See Holt v. Sullivan*, 921 F.2d
> 1221, 1223 (11th Cir. 1991).  If the ALJ discredits subjective testimony, he
> must articulate explicit and adequate reasons for doing so.  *See Hale v.
> Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987).  Failure to articulate the
> reasons for discrediting subjective testimony requires, as a matter of law,
> that the testimony be accepted as true.  *See Cannon v. Bowen*, 858 F.2d
> 1541, 1545 (11th Cir. 1988).

Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002).  The reasons articulated by

the ALJ for disregarding the claimant's subjective testimony must be based upon

substantial evidence.  Jones v. Department of Health and Human Services, 941 F.2d

1529, 1532 (11th Cir. 1991).

The ALJ determined at step 2 that Plaintiff has the "severe" impairment of cardiac afibrillation. R. 14. The ALJ found, however, that the medical records contradicted Plaintiff's assertions that he has had continued problems with his heart following the placement of a pacemaker. R. 17-18.

In particular, the ALJ noted that while Plaintiff had previously said that he lacked energy, after the pacemaker had been implanted and adjusted, he said he had more energy and was able to walk his dog for 1 to 1.5 miles on a daily basis. R. 17. The ALJ concluded:

> The undersigned notes the claimant's lack of complications with his pacemaker placement, his denial of experiencing any dyspnea, palpitations or syncope, and his ability to walk his dog on a daily basis without difficult, all of which are inconsistent with a finding of disability and reflect negatively on his credibility regarding disability as a whole.

R. 17.

These findings are supported by substantial evidence in the record and are sufficient reasons to discount Plaintiff's testimony as to symptoms. The ALJ first discussed the medical record from July through November, 2008, a period when Plaintiff had significant cardiac improvement after he received a pacemaker. As noted there by the ALJ, Plaintiff was admitted to the hospital on July 10, 2008, with shortness of breath, chest discomfort, and palpitations, and he was in atrial fibrillation. R. 969. He denied that he experienced near syncope, syncope, exertional chest pain, lower extremity edema, or orthopnea.[3] R. 974. A pacemaker was provided on July 11, 2008.

---

[3] Orthopnea is difficulty in breathing that occurs when lying down and is relieved upon changing to an upright position (as in congestive heart failure). MEDLINE PLUS (MERRIAM-WEBSTER).

R. 969.  It was noted that Plaintiff had a history of hypertension, hyperlipidemia, and atrial fibrillation refractory to antiarrhythmic therapy.  *Id*.  Adjustments were made to the pacemaker on July 14, 2008.  R. 970.  Plaintiff was discharged on July 15, 2008, with no complaints of chest pain or shortness of breath.  *Id*.

On August 11, 2008, the performance of Plaintiff's pacemaker was evaluated.  R. 967, 972.  Plaintiff's only reported "issue" that day was lack of energy, but it was noted that he "had not been out of his house for more than two months."  R. 972-973.  Plaintiff said that he felt "significantly better."  R. 972.  His heart had a regular beat and rhythm.  *Id*.  The physician noted that with this improvement, many of Plaintiff's medications had been stopped.  R. 973.  His hypertension was well controlled.  *Id*.  His hyperlipidemia was treated with pravastatin.  *Id*.

On November 17, 2008, Plaintiff returned for checkup of his pacemaker.  R 960.  He had no complaints and "no intercurrent cardiovascular symptomatology."  *Id*.  and R. 962.  He denied that he had any chest pain, inappropriate dyspnea, palpitations, syncope or near syncope, or peripheral edema.  R. 962.  He told his physician that his "energy level had been good recently and as such he is walking his dog 1-1.5 miles day . . .  without difficulty."  *Id*.  The pacemaker was "apparently functioning."  R. 961.  Plaintiff had "noticed significant improvement."  R. 963.  Plaintiff said he had been "more physically active by walking his dog almost daily."  *Id*.

The subsequent medical records concerning Plaintiff's heart condition show continued significant improvement.  On February 17, 2009, Plaintiff reported to his cardiology physician that he was still doing well, and continued to walk his dog 1.5 miles

a day.  R. 1139.  He had no cardiovascular symptoms, and denied that he had any chest pain, dyspnea, palpitations, syncope, or edema.  *Id.*  His hypertension and hyperlipidemia were controlled and stable.  R. 1137. It was noted, however, that he continued to have atrial fibrillation episodes 5% of the time, with the longest episode lasting 10 and 1/2 hours.  *Id*.

On February 18, 2009, it was determined by Plaintiff's urologist that Plaintiff's chronic atrial fibrillation was unchanged, and he was doing well on Coumadin.  R. 1169. He was also doing well with his pacemaker.  R. 1170.  His hypertension was unchanged and looked good that day.  *Id*.

On July 16, 2009, Plaintiff was examined by Shio N. Agrawal, M.D., for the Veteran's Administration for a pension evaluation.  R. 994.  Plaintiff was seeking a non-service-connected pension benefit.  *Id.*  It was noted that he had had a motor vehicle accident in 2002 and a right rotator cuff tear and repair in 2006.  *Id.*  He had developed right elbow tendinitis and had had cortisone shots.  *Id.*  A history of low back pain was noted.  *Id.*  It was noted that Plaintiff had delivered auto parts from 2002 to 2007 and had been an auto mechanic before that.  *Id.*  It was reported that Plaintiff could dress, undress, shower, and bathe, and did not use any mechanical aids.  R. 995.  He was ambulatory, with normal gait.  *Id.*  His heart was in regular rhythm, with a pacemaker. *Id.*  Plaintiff had painful limited motion of his right shoulder and right elbow, with increase of pain with five such movements.  *Id.*  Motor power was intact on the left upper extremity and both lower extremities, and was 4+ on the right upper extremity due to pain in the right shoulder and elbow.  *Id.*  The diagnosis was "essential hypertension

without proteinuria," chronic atrial fibrillation with a pacemaker, hyperlipidemia, right rotator cuff tear with repair, tendinitis in the elbow, chronic low back pain, and independence in activities of daily living.  R. 996.

On August 12, 2009, Plaintiff was seen by his cardiologist.  R. 1128.  He complained that day of discomfort on the left side of his chest and episodes of dizziness and lightheadedness when he stands.  *Id.*  His heart rate and rhythm were regular, however.  R. 1129.  The examining physician said he did not think that Plaintiff had a recurrence of pleural effusion, and this diagnosis was confirmed by x-ray.  *Id.*  The physician thought instead that Plaintiff's experience of dizziness was related to orthostatic[4] hypotension.[5]  *Id.*  The treating physician said that Plaintiff was taking multiple medications that could cause orthostatic hypotension.  R. 1130.  The physician determined that his atrial fibrillation was stable, in "post AV node ablation" (removal).  *Id.*

On November 3, 2009, Plaintiff was still doing well.  R. 1141.  He denied having chest pain, dyspnea, palpitations, syncope, or peripheral edema.  *Id.*  These latter two medical notes were mentioned by the ALJ as a basis for discounting Plaintiff's testimony.  R. 18.

In summary, the ALJ correctly followed the law with respect to his evaluation of Plaintiff's subjective testimony concerning disability as a consequence of atrial

---

[4] Orthostatic is of, relating to, or caused by erect posture.  MEDLINE PLUS (MERRIAM-WEBSTER).

[5] Hypotension is abnormally low pressure of the blood.  MEDLINE PLUS (MERRIAM-WEBSTER).

fibrillation.  The ALJ gave adequate reasons, supported by substantial evidence in the record, to make his credibility finding.

The ALJ also relied upon evidence of Plaintiff's daily activities in support of his finding that Plaintiff's impairments are not as limiting as he alleges.  R. 15-16.  The ALJ determined that Plaintiff is able to drive a Jeep, picks up his son from school, shops at WalMart, and does grocery shopping once a week.  R. 16.  The ALJ found that at the grocery store, Plaintiff can carry two or three items in his hands.  *Id.*  It was found that Plaintiff testified that he could do simple cooking, vacuuming, light laundry, yard work such as mowing and weeding his lawn, take his son fishing, and walk his dog for about two miles a day.  *Id.*  The ALJ determined that these daily activities were "inconsistent with a finding of disability and reflect[ed] negatively on [Plaintiff's] credibility . . . ."  *Id.*

Plaintiff himself testified that he drives a motor vehicle, taking his son to school daily, and shops at a drug store, or Publix, or WalMart.  R. 37.  The drive to school takes about "15 minutes both there and back."  R. 64.  He does the grocery shopping for the family because his wife works.  R. 37.  He uses the grocery cart.  R. 38-39.  He said that grocery shopping takes 15 to 35 minutes.  R. 39.  Plaintiff said he can take care of his personal hygiene and can do minor cooking.  R. 49.  He explained that dressing and bathing takes longer due to problems with his right arm and shoulder.  R. 60.  Buttoning is not impaired.  *Id.*  He said he could wash dishes and do some laundry.  R. 50.  He said that he could do some vacuuming, but his shoulder "locks up and pops and all."  *Id.*  He vacuums about twice a month.  R. 61.  He said that he had tried to show his son how to use the weed eater.  R. 51.  He could use a weed eater for about

30 minutes.  R. 62.  His son did the mowing now, and he sometimes took his son fishing

from a dock.  R. 51.  He said his physician advised him to get out and walk, and he

walks for 20 to 30 minutes.  R. 54.

Two findings by the ALJ are not supported by the evidence.  Plaintiff said he

drives a Pontiac, not a Jeep.  R. 37.  He also said he used a weed eater on his lawn,

but he did not say that he mows the lawn.  R. 51, 62.  The rest of the ALJ's findings

have the support of substantial evidence in the record.  Plaintiff did say that he could

drive so that he could take his son to school and shop for the family.  He did say he

could take care of his personal hygiene, do simple cooking, clean dishes, do some

laundry, and do some vacuuming.

Evidence of daily activities is marginal evidence, at best.  Ross v. Apfel, 218 F.3d

844, 849 (8th Cir. 2000) ("The ability to perform sporadic light activities does not mean

that the claimant is able to perform full time competitive work.");  Foote v. Chater, 67

F.3d 1553, 1561 (11th Cir. 1995);  Lewis v. Callahan, 125 F.3d 1436, 1441 (11th Cir.

1997);  Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986);  Foote v. Chater, 67 F.3d

1553, 1561 (11th Cir. 1995).  Still, the evidence of daily activities here is at least some

evidence to support the ALJ's credibility finding.  While perhaps not enough standing

alone, it is substantial evidence to consider along with the lack of evidence of a serious

back condition and the lack of evidence of impairment due to cardiac problems after the

pacemaker was implanted.  Consequently, the argument that the ALJ's credibility

findings were not supported by substantial evidence in the record is not persuasive.

**Whether the ALJ erred in determining Plaintiff's residual functional capacity, or failed to consider Plaintiff's impairments in combination, or erred in finding Plaintiff was able to perform work as a courier**

Plaintiff argues that the ALJ incorrectly determined his residual functional capacity, and failed to include into the hypothetical a number of limitations relevant to his ability to do work as a courier.  Plaintiff argues that the limitations should have included inability to drive a motor vehicle due to dizziness, inability to keep pace, missing work for days, complications from medications (including neuropathy, paresthesia, dizziness, drowsiness, shortness of breath, fatigue, and need to be in a reclining position), and that these should have been considered in combination.  Doc. 18, pp. 43, 45.  Plaintiff also argues error in failing to determine the number of courier jobs that would be limited to use of a motor vehicle only, instead of foot, bicycle, or motorcycle.  *Id.*, p. 44.

This argument is a challenge to the residual functional capacity assessment of the ALJ.  But the ALJ properly determined that Plaintiff's residual functional capacity was not significantly limited by either back problems or cardiac problems, and determined that his testimony as to the limiting conditions set forth in the immediately preceding paragraph were not credible to the degree alleged.  For example, the ALJ implicitly rejected Plaintiff's testimony that he must be in a reclining position for much of the day.  Consequently, these arguments are not persuasive.

**Conclusion**

"If the Commissioner's decision is supported by substantial evidence we must affirm, even if the proof preponderates against it."  Phillips v. Barnhart, 357 F.3d 1232,

1240, n. 8 (11th Cir. 2004) (citations omitted).  The court must give "substantial deference to the Commissioner's decision."  Dyer v. Barnhart, 395 F.3d 1206, 1211 (11th Cir. 2005).  Considering the record as a whole, the findings of the Administrative Law Judge were based upon substantial evidence in the record and correctly followed the law.

Accordingly, the decision of the Commissioner to deny Plaintiff's application for Social Security benefits is **AFFIRMED** and the Clerk is directed to enter judgment for Defendant.

**IN CHAMBERS** at Tallahassee, Florida, on March 7, 2012.

s/    William C. Sherrill, Jr.
**WILLIAM C. SHERRILL, JR.**
**UNITED STATES MAGISTRATE JUDGE**